Filed 5/7/14  In re Riley T. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re RILEY T., a Person Coming Under the Juvenile Court Law. | B249550<br>(Los Angeles County<br>Super. Ct. No. CK97518) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>K.F.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite Downing, Juvenile Court Referee.  Affirmed.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant K.F. (Mother) and W.T. (Father) have a son, Riley T. (born September 2012). Mother appeals following the court's jurisdictional findings pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] and orders placing Riley in her care under the supervision of the Department of Children and Family Services (Department), and directing her to participate in family maintenance services. Mother contends the court erred in failing to give proper notice in compliance with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq., hereinafter ICWA) and in failing to make a proper ICWA inquiry.

*FACTUAL & PROCEDURAL BACKGROUND*

In January 2013, when Riley was 4 months old, the Department received a referral that parents had a history of domestic violence and that Father had slapped Riley in the face, causing him to sustain a bruise. When the social worker visited Mother's home, Mother reluctantly explained that Father sometimes stayed with her but did not live there. She had left Riley in Father's care while she went out in the evening. When she saw the bruise the next morning, Father could not explain it. Mother said she did not call the police or the Department because she had been in foster care and was afraid Riley would be taken away from her. Father admitted to the social worker he had been drinking alcohol, blacked out, and did not remember hitting the child, although he remembered feeling overwhelmed because Riley was crying and Mother was not home. He admitted he had a criminal record, was presently homeless and that he had anger issues and an alcohol problem.

Mother was cooperative with the social worker and stated she removed Father from her home, and submitted to a drug test. Riley was left in her care with Department supervision.

Mother later admitted using marijuana. Mother tested positive on February 20, 2013, on March 21, 2013, and did not show up for another test in March 2013.

---

[1]     All further undesignated statutory references shall be to the Welfare and Institutions Code.

2

Although she had previously denied any Indian heritage, on January 29, 2013, Mother filed an ICWA-020 form indicating she may have Indian ancestry from her great, great, great-grandmother. She did not identify a tribe. At the detention hearing on that date, the juvenile court ordered the Department to follow up with an investigation regarding ICWA issues and notification. The matter was set for a pretrial resolution conference on March 1, 2013.

In a report prepared for the March 1st hearing, the social worker reported that she completed ICWA interviews with both parents on February 12, 2013. Mother told the social worker she believed she had Cherokee heritage. Father denied Indian heritage.

The Department filed proofs of service of hearing notices for the March 1, 2013 hearing on the Bureau of Indian Affairs (BIA) offices in Sacramento, Washington D.C., and three federally recognized Cherokee tribes. The notices were served on February 21, 2013, and return receipt cards indicate they were received on February 25 or 26, 2013.

At the March 1st hearing, the matter was continued for mediation.

On March 5, 2013, the BIA responded, requesting that notice be referred to the individual tribes. Both the United Keetoowah Band of Cherokee Indians in Oklahoma and the Eastern Band of Cherokee Indians replied on March 19th, stating they found no evidence that Riley was a descendant of anyone on their tribal rolls. The Cherokee Nation of Oklahoma responded on March 7th, informing the Department that it did not have sufficient information available to ascertain if Riley's relatives were members. It specifically requested maternal grandmother's middle name, maiden name and date of birth, maternal grandfather's correct date of birth[2] and paternal great grandparents' names and dates of birth.

At the hearing scheduled for mediation on April 8, 2013, the Department provided a Last Minute Information for the court which included the responsive ICWA letters. The social worker indicated in a report that she faxed a letter to the Cherokee Nation of

---

[2]     The form had listed his date of birth as November 24, 2013.

3

Oklahoma indicating the information on the relatives was not available; however, there is no copy of this letter in the record. The matter did not settle at the mediation hearing.

The adjudication hearing commenced on April 17, 2013. The juvenile court sustained the amended section 300 petition pursuant to subdivisions (a) and (b). Riley was ordered placed in Mother's home under the Department's supervision. The Department was ordered to provide Mother with family maintenance services and Father was allowed monitored visitation. Mother appealed from the findings made at this hearing. Mother contends the Department failed to make sufficient inquiry about the names of Riley's grandparents and that the ICWA notices were not timely sent. In addition, she contends the court erred in failing to make an ICWA finding.

*DISCUSSION*

The purpose of ICWA is to "protect the best interests of Indian children and promote the stability and security of Indian tribes and families. . . ." (25 U.S.C., § 1902; *In re Karla C.* (2003) 113 Cal.App.4th 166, 173-174.) ICWA requires notice to federally recognized tribes when there is reason to know an Indian child is affected by dependency proceedings. (25 U.S.C., § 1912, subd. (a); see *In re S.B.* (2005) 130 Cal.App.4th 1148, 1157.) "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under [ICWA] irrespective of the position of the parents, Indian custodian or state agencies." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)

The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402-403.) We review the trial court's order for substantial evidence. (*Ibid*.)

According to ICWA, notice requirements apply only when "foster care placement of, or termination of parental rights to, an Indian child" are involved. (25 U.S.C., § 1912, subd. (a).)

4

Section 224.2 provides that notice must be sent in an "Indian child custody proceeding." Section 224.1, subdivision (d), defines an "Indian child custody proceeding" as "a proceeding for temporary or long-term foster care or guardianship placement, termination of parental rights, preadoptive placement after termination of parental rights or adoptive placement."

The California Rules of Court, however, expand the notice requirements to apply to "Proceedings under Welfare and Institutions Code section 300."[3]

The ICWA expressly permits states to provide a higher standard of protection than the ICWA. The ICWA does not preempt those higher standards. (*In re S.B., supra*, at p. 1158.)

The Department contends that because Riley remained in Mother's custody for the duration of the case and removal from Mother's custody was never contemplated, the notice requirement does not apply. While the ICWA only requires notice to be given when foster care placement of an Indian child is sought, rule 5.480 provides that its notice requirements apply to all proceedings under Welfare and Institutions Code section

---

[3]    At the time of the hearings in this case, California Rules of Court, rule 5.480 provided: "This chapter addressing the Indian Child Welfare Act (25 United States Code section 1901 et seq.) . . . applies to all proceedings involving Indian children that may result in an involuntary foster care placement; guardianship or conservatorship placement . . . declaration freeing a child from the custody and control of one or both parents; termination of parental rights; or adoptive placement including: [¶] (1) Proceedings under Welfare and Institutions Code section 300 et seq., and sections 601 and 602 et seq. in which the child is at risk of entering foster care or is in foster care. . . . [¶¶] This chapter does not apply to voluntary foster care and guardianship placements where the child can be returned to the parent or Indian custodian on demand."

Effective July 1, 2013, to conform to the Supreme Court's holding in *In re W.B.* (2012) 55 Cal.4th 30, after the hearings at issue, the amendment substituted the word *most* for the term *all* in the introductory paragraph and moved the language in paragraph (1) about section 601 and 602 to a new paragraph (2), and renumbered the rest of the rule sections. Paragraph (2) now reads that the chapter applies to "Proceedings under Welfare and Institutions Code sections 601 and 602 et seq., whenever the child is either in foster care or at risk of entering foster care."

5

300. We therefore conclude that notice was required in this case. Mother contends that the notices did not contain complete information, and were therefore deficient.

An ICWA notice must include, if known, (1) the name, birthplace and birthdate of the child; (2) the name of the tribe in which the child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's biological parents, grandparents, great-grandparents and other identifying information such as tribal enrollment numbers; (4) a statement giving notice about the right of the tribe to intervene, and (5) a copy of the dependency petitions. (25 C.F.R., § 23.11, subd. (a)(d)(3); *In re S.M.* (2004) 118 Cal.App.4th 1108, 1116.) "The social worker has 'a duty to inquire about and obtain, if possible, all of the information about a child's family history'" as it pertains to Indian heritage. (*Ibid*.)

Section 224.2 provides that no proceedings may be conducted until at least 10 days after receipt of the notice.

Even though ICWA notice requirements are strictly construed (*In re Karla C., supra*, 113 Cal.App.4th at p. 174), substantial compliance, not perfection, is sufficient. (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 566.)

The hearing notices sent in this case (form ICWA-030) indicated Riley's full name, his birth date and place of birth, the full names of Mother or Father, their birth dates and places of birth, indicating unknown tribal membership. The form indicated Cherokee heritage for Father, even though it does not appear that he ever claimed any.

The form listed the maternal grandmother's name and possible tribes, but no address, birth date or place. It listed the maternal grandfather's name and birth date, birthplace and possible tribes, but no address, the maternal great grandfather's birth date and place of birth. It listed the paternal grandfather's name, but no address, birth date or address, and no information for paternal grandmother. It listed the maternal great grandmother's name, birth date and place and the maternal great grandfather's name. It did not list any information for paternal great grandparents.

The notices were sent on February 21, 2013, for a March 1st hearing. The acknowledgments of receipt were dated February 25th and 26th. However, the March 1st

6

hearing was continued.  By the time of the next hearing, on April 8th, all of the tribal entities and the BIA had responded.

Furthermore, the notices sent to the Cherokee tribal entities in the area and the BIA included all the information that had been provided to the social worker.  Mother does not show that any information she gave to the social worker was omitted or that the social worker could have discovered the information with further interviews.  Mother was the source of information about her Cherokee heritage and she was the only one who could provide any additional information to the social worker.  Since she had no specific tribal information, there was no duty to notify any specific tribe.  (*In re Z.N.* (2009) 181 Cal.App.4th 282, 298; *In re J.D.* (2010) 189 Cal.App.4th 118, 125.)  We conclude that any omitted information or delay in sending the notice was harmless.  (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1411.) Mother fails to demonstrate any basis for believing a different result would have been achieved if additional inquiries had been made.

Finally, Mother argues the juvenile court's failure to make an ICWA finding requires reversal.  Mother is correct that the court was required to make a finding as to whether ICWA applies to the proceedings.  (*In re. E.W.*, *supra*, 170 Cal.App.4th at pp. 403-404; *In re Asia L.* (2003) 107 Cal.App.4th 498, 506.)  But in light of the fact that notices were sent and the agencies responded, the failure to make a finding in this case is not reversible error.  Any error was harmless.  (See *In re S.B., supra,* 130 Cal.App.4th at pp. 1161-1162.)

### DISPOSITION

The juvenile court's orders of April 17, 2013 are affirmed.


**WOODS, J.**

**We concur:**


**PERLUSS, P .J.**                                                    **ZELON, J.**

7