Filed 1/22/21  In re Baby Boy W. CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Baby Boy W., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.V. et al.,<br><br>        Defendants and Appellants. | A159211<br><br>(Contra Costa County Super. Ct. No. J1900115) |

A.J. (Mother) and S.V. (Father) appeal from orders following jurisdiction and disposition hearings declaring Baby Boy W. (minor) a dependent, ordering him removed from parents' custody, and ordering reunification services.  Parents' sole contention on appeal is that the juvenile court erred by not complying with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).  We affirm.

## BACKGROUND[1]

In February 2019, the Contra Costa County Children and Family Services Bureau (Bureau) filed a petition alleging Mother was unable to provide regular care for the minor, then 21 days old, due to her history of substance abuse and because the minor's umbilical cord tested positive for methamphetamines, and further alleging Mother's parental rights had been terminated as to minor's half-sibling, C.W. (Welf. & Inst. Code, § 300, subds. (b) & (j).) Attached to the petition was California Judicial Council form ICWA-010 for minor.[2] Boxes were checked indicating minor "may have Indian ancestry." Maternal Grandmother reported to the social worker that C.W. was "a citizen of the Muscogee (Creek) Nation."

The report prepared for the detention hearing recounted that the juvenile court had made a finding the previous year that ICWA applied to C.W., and that C.W. had " 'a Citizenship ID card with the Muscogee (Creek) Nation.' " However, his ancestry was through his father and not through the half-siblings' shared parent, Mother.[3]

The juvenile court detained minor and set the matter for a jurisdiction hearing.

---

[1] We discuss only those facts pertinent to the issue on appeal.

[2] The Judicial Council of California ICWA-010 form (Indian Child Inquiry Attachment) is prepared by the social services agency and reports whether the child named in the juvenile dependency petition may have Indian ancestry.

[3] The juvenile court judicially noticed portions of C.W.'s juvenile dependency case. Those portions are included in the record on appeal.

Mother filled out an ICWA-020 form.[4]  She identified tribes of which she was a member or was eligible for membership, as the Gull Bay First Nation Ojibway and Cherokee tribes.  She also identified these as the tribes in which she might have Indian ancestry.  She additionally confirmed C.W. was "a member of Muscogee Creek Nation," and identified both the tribe name and band.  As to the "[n]ame and relationship of ancestor(s)" she wrote, "son, grandparents dad side Cherokee."

Several months later, minor's Father filled out an ICWA-020 form indicating he had "no Indian ancestry."

In a memo, filed June 2019, the Bureau requested that an "ICWA compliance hearing" be scheduled.[5]

---

[4]  The ICWA-020 form (Parental Notification of Indian Status) is filled out by the parent of the child named in the petition.  The forms seeks information on the child's Indian status, including whether the parent or child is a member of, or may be eligible for membership in, a federally-recognized tribe, and whether the parent's grandparents or other lineal ancestors were members of a federally-recognized tribe.  The form "is not intended to constitute a complete inquiry," and if the parent obtains or becomes aware of new information they must "let your attorney, all the attorneys on the case, and the social worker or probation officer, or the court investigator know immediately and an updated form must be filed with the court."  (Cal. Judicial Council Form ICWA-020.)

[5]  There had been a delay in the dependency proceedings because Mother failed to "provide the baby to Child Family Services after the baby was ordered detained."  The court issued an arrest warrant for Mother in early February 2019.  Santa Cruz Sherriff's officers went to maternal grandmother's home several times over the course of several months, but neither Mother nor minor was present.  On April 1, the Concord Police Department notified the Bureau they had Mother in custody.  Mother stated the minor "was with her 'parents.' "  When officers performed a welfare check at the maternal grandmother's home, she stated minor was not there, although officers "heard a baby crying inside" when they first approached the home.  Two days later, Father contacted law enforcement to report Mother

That same month, at an interim hearing on immunizations, the County expressed frustration Mother had not yet filled out the ICWA-030 form the Bureau had sent her.[6] The Bureau explained that Mother had "previously . . . filled out an ICWA-020. What the Bureau does is take the -020 and we do further investigation. We say, Tell me about your mother. Tell about your grandmother. [The ICWA-030 is] a lengthy form that [the social worker has to finish completing] . . . and send to all the tribes that the mother indicates she may be a part of. [¶] [The social worker] had the previous ICWA-020 from [Mother's] previous child. . . . She said, Are there any updates? If so, please provide them and update us if there is any new information. We have yet to hear back from [Mother]. [¶] So when we send this information to the Bureau of Indian Affairs as well as any new tribes that she indicates she may be a part of, if that information is incomplete, it falls back on us."

The court then directed its attention to Mother's counsel, stating Mother "needs to cooperate with this." The Bureau needs "Mother's cooperation to give them all the details about who the people are that they need to talk to to identify which tribes. Your client has a history of doing whatever she can to not cooperate."

At the end of the hearing, the court rescheduled the jurisdiction hearing. It also set a tentative date for the disposition hearing, which the court also ordered as the "ICWA compliance date."

_____

missing. Upon officers' arrival at Father's address, they found minor and placed the infant in "a licensed foster home the next day, April 4."

[6] The ICWA-030 form (Notice of Child Custody Proceeding for Indian Child) notifies the tribe or tribes that "a child custody proceeding under the [ICWA] has been initiated," the hearing information, and information on the named child, including parents' information, grandparents' information, great-grandparents' information, and any "[o]ther lineal biological ancestors," if known. (Cal. Judicial Council Form ICWA-030.)

Mother then filled out a second ICWA-020 form indicating she was a member of or may be eligible in the "Gull Bay Band," that she "may have Indian ancestry" with the "Cherokee, Ojibway, Chippawa" tribes and bands. She also stated minor "may be a member of, or eligible for membership in" the "Gull [B]ay [B]and, Muscogee Creek Nation, Cherokee" tribes or bands. This time when checking the box indicating, "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," she listed only minor's half-sibling when prompted for the "Name and relationship of ancestor(s)."

A month later, at the contested jurisdiction hearing, the Bureau first addressed ICWA. The Bureau explained it had sent Mother an ICWA-030 form to fill out, as well as C.W.'s ICWA-030 forms "to make it easier for her" to fill out minor's form. The day of the hearing, Mother sent back the form, which stated at the top " 'Please do not file this. I'm still working on it. Not complete.' " However, the court observed, Mother had not filled in any information, and told counsel, "We need data. We need the information of grandparents, about great-grandparents. Where is that?" Mother's counsel explained, "[Mother] can provide the dates for grandparents, birthdays, et cetera . . . when she got all of that exact information, and I can forward it to County Counsel." The court replied, "she was sitting outside for the better part of half an hour, at least 45 minutes, with this form; correct?" "[T]he concern I have is that [Mother] has not always been as cooperative in providing information and providing accurate information. . . . [¶] . . . [¶] Federal law and state law require that we give notice to the Indian tribes, which requires that parents provide information of who the parents are, who the grandparents are. . . . And this is information she has access to, and some of which I'm sure she had as she sat outside. [¶] So I'm

5

having, again the experience of [Mother] that she's just not being cooperative, and she's trying to be obstructive rather than cooperative." When asked when Mother "will . . . be able to have provided all of this information," her counsel stated August 1. The court ordered Mother to "complete [the] ICWA information and a fully executed ICWA 30 form, as well as correct any information and provide accurate information for any corrections on the ICWA 30 form that was provided to her. . . . She shall provide that to the bureau by August the 1st at 5:00 p.m."

After county counsel asked the court to take judicial notice of Mother's "criminal history" and "dependency and termination of Mother's services" to minor's half-sibling, counsel for Mother and Father asked for a continuance. The court granted the continuance but expressed "concern[] about the delays on this ICWA issue" and suggested "we keep that August 6 date, have that be a date for the contested jurisdiction hearing. We can then, at that time, set a hearing if we need to for the ICWA compliance once we have ICWA notices that have been sent out." County counsel responded, "I did want to let the court know that we have sent out our ICWA notice and our ICWA 030s based on information that we had up until, I think, last Tuesday, and that information was submitted and mailed out to all of the tribes that have been indicated by the mother up until today because she did file an ICWA 020. And so we filled out all of the information based on what she filed in her ICWA 020. She filed two separate ones with conflicting information, but we included all of that information, and we included all of the information from her previous child's case in regards to her because—which she was—she herself had no Native American ancestry, it was the child's biological father who had it. [¶] So for this purpose, I just want to let the court know we have sent ICWA 030s out. Once we get the mother's revised version, we will send

6

out an amended version, if applicable." The court replied, "Mother will provide that information to the bureau by 5:00 p.m. on August 1st."

The jurisdiction hearing was held over the course of several days (August 6, August 29, September 11, and October 7). At the October 7 hearing, the court began by stating, "We're here today to continue the contested juvenile jurisdiction hearing in this case. And also for an ICWA hearing, though I understand there were some issues with respect to some of the notices having to be resent. So the ICWA issue is not yet ripe; is that correct?" County counsel stated, "The Court cannot find that does not apply, but the Court can find that notice was proper today." The court replied, "I have here an extensive list of . . . trial exhibits, Exhibits Number 1 through 64. And I honestly have not had the opportunity to review all of Mother's representations with respect to claimed tribal affiliation . . . so I'm not sure I can find that notice was proper without going through all of these exhibits. . . . [¶] So she has claimed Vavle [*sic*] First Nation, Ojibwa, Cherokee, Muscogee Creek Nation, and Chippewa tribe. Is that correct?" "Okay. And it appears that those tribes have all been given notice. Is that your understanding?" County counsel replied, "Yes your Honor, with the last tribe being noticed on that September date." The court found "notice has been given as required by law," as it did "appear that notice" was given but that "we do have several notices as to which the 60 days has not yet run," although "quite a few [tribes] have confirmed that the child is not a member of those tribes." The court then scheduled a hearing for an ICWA determination.

At the November 18 ICWA compliance and disposition hearing, county counsel started by saying, "It's been well past 60 days, and we'd ask the Court to find the [ICWA] does not apply." Counsel noted they had "a very

7

brief discussion a few moments ago with [Mother]," and she wanted "to do more research and get information; but until we receive that information, there is no reason to believe this child is a Native American child as described under the [ICWA.]" Minor's counsel submitted on the issue. Mother's counsel stated that Mother "needs to get back to the Department and me. So as of now, I will submit the issue. But pending any new information, if we receive any from my client and the child is eligible, I will add it back for that issue." Mother's counsel agreed "[t]here is no reason to believe that this is an Indian child," "[n]ot with the information we have in the file today." The court stated it had "reviewed the ICWA exhibit list initially submitted as well as the supplemental and second supplemental exhibit lists that were submitted" and based on "review of those, it does not appear that there is any reason to believe that this is an Indian child. [¶] Based on the evidence I have before me, it does appear that notice has been given as required. Based on the information available to date and based on the responses and/or the passage of time, it does appear that there is no reason to believe that this is an Indian child at this time. As of now, it appears ICWA doesn't apply."

## DISCUSSION

The applicable law is summarized in two recent cases *In re D.S.* (2020) 46 Cal.App.5th 1041 (*D.S.*) and *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*) as follows:

> "Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster

care or adoptive homes. [Citations.] In 2006, California adopted various procedural and substantive provisions of ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. . . . [Citations.] Those changes became effective January 1, 2019 [citation], and govern here.

"The new statute specifies the steps the Agency and the juvenile court are required to take in determining a child's possible status as an Indian child. An 'Indian child' is defined in the same manner as under federal law, i.e., as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]' (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].) The Agency and the juvenile court have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies. (Welf. & Inst. Code, § 224.2, subd. (a) ['The duty to inquire [whether a child is or may be an Indian child] begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether [he or she] has any information that the child may be an Indian child.']; Cal. Rules of Court, rule 5.481(a); see [*In re*] *Isiah W.* [(2016)] 1 Cal.5th [1,] 14 ['juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status'].)

9

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S., supra*, 46 Cal.App.5th at pp. 1048-1049, fn. omitted.)

"California law also requires 'further inquiry regarding the possible Indian status of the child' when 'the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding. . . .' (§ 224.2, subd. (e).) The Legislature, which added the 'reason to believe' threshold for making a further inquiry in 2018, did not define the phrase. When that threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership of eligibility in a tribe.' [Citations.]

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a 'reason to believe' an Indian child is involved, a third step—notice to Indian tribes—is required under ICWA and California law if and when 'the court knows or has reason to know that an Indian child is involved.' " (*Austin J., supra*, 47 Cal.App.5th at pp. 883-884.)

10

"The juvenile court may . . . make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it subsequently received information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)" (*D.S., supra*, 46 Cal.App.5th at p. 1050.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S., supra*, 46 Cal.App.5th at p. 1051.)

Parents contend the "information Mother provided regarding the minor's Native American heritage and [half-sibling's] membership in the Muskogee Creek Nation gave the juvenile court and Bureau 'reason to believe' that an Indian child was involved," and therefore "the duty of inquiry was triggered, requiring the social worker to interview extended family members, including maternal grandmother."

The Bureau maintains the issue was forfeited. While acknowledging forfeiture generally does not apply to ICWA notice requirements, it contends Mother's actions here—"in not responding to requests for information and her acquiescence to the juvenile court's finding that there is no reason to believe [minor] is an Indian child"—"rise to the level of gamesmanship" the court found in *In re Amber F.* (2007) 150 Cal.App.4th 1152 (*Amber F*).

In *Amber F.,* the Court of Appeal had previously reversed the juvenile court's order terminating the mother's parental rights for "defective notice"

11

under ICWA. After the juvenile court found proper ICWA notice had been given and reinstated its previous orders, the mother—who made no objection below—appealed "claiming there were additional errors in the ICWA notice." (*Amber F., supra*, 150 Cal.App.4th at p. 1154.) This time, the appellate court concluded the mother had forfeited the issue and affirmed. (*Ibid.*) The court observed the case had been remanded "for the sole purpose of correcting defective ICWA notice, and [the mother] had multiple opportunities to examine the notice documents. Had she brought the errors she now asserts to the juvenile court's attention, it could have dealt with them appropriately. She did not. At this juncture, allowing [the mother] to raise these issues on appeal for the first time opens the door to gamesmanship, a practice that is particularly reprehensible in the juvenile dependency arena." (*Id.* at p. 1156.)

We agree that on the instant record, mother forfeited the issue. The Bureau repeatedly asked her for information, but she failed to cooperate, even in the face of a directive by the trial court. The case was continued numerous times to ensure that she had ample time to supply any additional information, which she never did. And when the matter finally came on for hearing, she agreed that on the record before the court, there is no reason to believe the minor is a Native American child.

Despite mother's forfeiture, we exercise our discretion to consider the merits.

As we have recited, Mother filled out two ICWA-020 forms. On the February 2019 form, she indicated she was or may be member of a federally recognized tribe, listing "Gull Bay First Nation Ojibway, Cherokee." She also indicated she "may have Indian ancestry," and listed "Cherokee, Ojibway, Gull Bay First Nation, Canada." Under the section asking if any of her

12

"parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe," she listed the minor's half-sibling, C.W., and "grandparents dad side Cherokee." On the updated June 2019 form, she indicated she was or may be a member of only the "Gull Bay band." Under the section indicating, "Indian ancestry," she indicated "Cherokee[,] Ojibway[,] Chippewa." And under the section asking if mother's "parents, grandparents, or other lineal ancestors" are or were members of a federally recognized tribe, she listed only C.W.

This, Mother asserts, gave the court and the Bureau a " 'reason to know' that an Indian child was involved." Mother also notes that she "reported . . . her biological father had Cherokee heritage," citing to the disposition report in C.W.'s dependency case, which was judicially noticed by the juvenile court.

We first observe that while it is true minor's half-sibling is a member of the Muskogee Creek Nation, this is through his father and not the siblings' shared parent, Mother. Additionally, the Gull Bay First Nation Ojibway Tribe is a Canadian tribe and thus is not federally-recognized. Accordingly, ICWA is inapplicable to this tribe.[7]

Thus, the salient question is whether the other information Mother provided was enough to require further inquiry. Mother, relying on *In re A.M.* (2020) 47 Cal.App.5th 303 (*In re A.M.*), claims it was. The Bureau, relying on *Austin J., supra*, 47 Cal.App.5th 870, claims it was not.

---

[7] On our own motion, we take judicial notice of the relevant pages of the Federal Register of federally-recognized tribes, pursuant to Evidence Code sections 452, subdivision (c), and 459, subdivision (a). (See "Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs," 85 Fed.Reg. 5462-5467 (2020).)

*In re A.M.*, the mother initially indicated she was " 'unsure if she [was] of American Indian descent,' " and " 'denied that she or the children [were] registered with a tribe.' " (*In re A.M., supra*, 47 Cal.App.5th at p. 309.)  On her ICWA 020-form, she checked the box "indicating that she was or may be a member of, or eligible for membership in, a federally recognized tribe," but wrote " 'unknown' " for the tribe's name.  (*Ibid.*)  "She also checked the box indicating that one or more of her parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe and wrote 'MGF, MGA[C.M.]' beside the box."  (*Id.* at p. 309.)  She later told a social worker " 'she has Blackfoot and Cherokee tribe affiliation,' " and was " 'not registered,' " but " 'planned to register with them.' "  (*Id.* at p. 310.)  The Court of Appeal concluded that although the "only specific information" provided by Mother—that "she was told and believed she may have Indian ancestry with the Blackfeet and Cherokee tribes but was not registered" and listing her grandfather as "having possible Indian heritage but" never providing more information concerning her ancestry—was insufficient to trigger the ICWA *notice* provisions, "the information Mother provided was sufficient to require further *inquiry*."  (*Id.,* at p. 322, italics added.)

In *Austin J.,* the mother informed the juvenile court her " 'mother had Cherokee,' and her 'family in Little Rock, Arkansas' would have more information."  When filling out the ICWA-020 form, the mother left blank the box indicating whether she was or may be eligible for membership in a tribe but stated "the child 'may have Indian ancestry'; namely, Cherokee, through her grandmother, who is deceased."  When the mother spoke with the social worker she explained, she " 'may have [a] connection to the Cherokee or other tribes as well as having Creole heritage,' " but that she " 'did not know if she was registered with any tribe,' " and the "possible Cherokee heritage was on

14

her mother's side of the family through her maternal grandmother and maternal grandfather," and that her aunt "might have additional information." (*Austin J., supra*, 47 Cal.App.5th at p. 878.)  The maternal aunt, in turn, said maternal grandmother " 'may have had Cherokee heritage,' " maternal grandfather " 'possibly had heritage but that she did not know what tribe,' " and she was unaware if anyone in the family attended an Indian school, lived on a reservation or had been treated in an Indian clinic. (*Ibid.*)  The juvenile court found ICWA did not apply.

On appeal, the mother claimed the Department "was required to provide notice to Cherokee tribes because social workers and the court had 'reason to know an Indian child [was] involved.' " (*Austin J., supra*, 47 Cal.App.5th at p. 886.)  The Court of Appeal disagreed.  The mother's statements "that she 'may have Indian ancestry' and had been 'told that [her] mother had Cherokee [ancestry],' and the similar statement by the Mother's aunt that she 'may have had Cherokee heritage,' are insufficient to support a reason to believe the children are Indian children as defined in ICWA.  At most, they suggest a mere possibility of Indian ancestry." (*Id.* at p. 888.)  "Even if we assume," said the court, "that the possibility of Indian ancestry may suggest the possibility of Indian tribal membership, that bare suggestion is insufficient by itself to establish a reason to believe a child is an Indian child.  In the recent changes to California's ICWA-related law, the Legislature removed the language, 'information suggesting the child is a member of a tribe or eligible for membership in a tribe,' from the list of circumstances that provided one with a 'reason to know' a child is an Indian child.  Significantly, it did not add that language to a definition of the newly created 'reason to believe' standard for further inquiry.  We will not infer its incorporation into that standard.  [¶] In short, the fact disclosed through the

15

social worker's initial inquiry regarding the possibility that the children are Indian children—that Mother may have Cherokee ancestry—is insufficient by itself to provide a reason to believe that either the children or their parents are members of, or eligible for membership in, an Indian tribe. Therefore, the statute imposed no duty to make further inquiry." (*Id.* at p. 889.)

The instant case aligns more closely with *Austin J.* than with *In re A.M.* Father affirmatively stated he had no Indian ancestry. And despite repeated requests, mother never provided any more information about *her* ancestry beyond stating her father "had Cherokee heritage." (See *Austin J.*, *supra*, 47 Cal.App.5th at p. 888 ["Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member."].) While on her first ICWA-020 form mother indicated she was or may be member of a federally-recognized tribe, namely Cherokee, she omitted that tribe name on her updated, second ICWA-020 form under that section. Nor did she state any relative was a member of that tribe or give any indication she planned to register with that tribe, unlike the mother in *In re A.M.* (See *Austin J.,* at p. 889 [the mother in *In re A.M.* "did not merely say that she had Indian *ancestry*, but that she was or may be a *member* of a tribe or eligible for such membership, and that she had at least one ancestor who was or is a *member* of a tribe" and "[t]he fact that she planned to 'register' with certain tribes also implies that she was eligible for membership"].)

We therefore conclude the Bureau did not, on this record, have any duty of further inquiry.

We also agree with the Bureau that any asserted shortcoming in its inquiry was harmless since it sent notices to all the federally-recognized tribes mother ever mentioned—namely the Chippewa, Ojibwe, and Cherokee.

Mother claims these notices were deficient because they "did not contain sufficient information" as they "only contained the name, address, and date of birth of the maternal grandmother, the name, date of birth, and date of death of the maternal grandfather, and the name of *one* of the great-grandmother's and the name of *one* of the great grandfather's" thereby "specifically omitting the names of two of the great-grandparents, and dates of birth, death, and addresses for all four great-grandparents."  Mother cites to *In re S.E.* (2013) 217 Cal.App.4th 610 (*S.E.*) and *In re S.M.* (2004) 118 Cal.App.4th 1108 (*S.M.*), but her reliance on these cases is misplaced.

In *S.E.*, the mother stated she had Indian ancestry through the Cherokee tribe and that the maternal grandmother was half Cherokee.  (*S.E., supra*, 217 Cal.App.4th at p. 614.)  The maternal grandmother confirmed this and added that the child's maternal great-great-grandfather was Cherokee but "did not know if he was registered."  (*Ibid.*)  Even though notices were sent to the tribes indicated by the mother, the name of the child's maternal great-great-grandfather "was not stated anywhere on the . . . ICWA-030" form.  (*Ibid.*)  The Court of Appeal held the agency provided inadequate notice because the "information which was omitted here pertained directly to the ancestor Mother and the maternal grandmother affirmatively claimed was Indian."  (*Id.* at p. 615.)

In *S.M.*, the mother claimed Indian ancestry through the Cherokee Nation through her " 'mother's side."  (*S.M., supra*, 118 Cal.App.4th at p. 1113.)  The father told a social worker the minor's paternal grandmother "may have been registered with one of the Cherokee tribes."  (*Ibid.*)  Notice

was sent to the Cherokee Indian tribes, but it "did not include information about [paternal grandmother]." (*Id.* at p. 1115.) The agency conceded its initial notice was inadequate but urged the court to find any "error was cured" with later-sent notices. The Court of Appeal concluded the conceded error was "not cured." (*Id.* at pp. 1117-1118.) The new notices did "not include [the mother's] aliases, the birthdate and birthplace of the paternal grandfather, the birthplace of [the minor's] paternal great-grandparents, the places of death if any relatives are deceased, or any current or former addresses," and the notices had an inaccurate date of birth for minor's paternal great-grandfather. (*Id.* at p. 1117.) Furthermore, the Cherokee Nation had asked the agency "for additional information about the maternal grandparents and the paternal grandfather, '[i]n order to verify Cherokee heritage,'" and the agency had not responded nor had the agency sought to augment the juvenile court record with the responsive letter from the Cherokee Nation as was required. (*Id.* at p. 1118.)

Here, in contrast, the notices were not lacking in any information with which the Bureau had been provided. Mother had stated the maternal grandfather may have "Cherokee heritage." Importantly then, maternal grandfather's name, date and place of birth and death were included on the ICWA-030 form. The form also provided maternal grandfather's father's name, and stated that minor's maternal great-grandmother "had no Native American heritage" and that minor's other maternal great-grandmother's tribe was Canadian.

The form did not include additional information about the minor's maternal grandfather's parents. However, the Bureau repeatedly attempted to obtain this information from Mother, to no avail. The Bureau had also been unsuccessful in obtaining this information from maternal grandmother

18

during the minor's half-sibling's dependency proceedings.  Accordingly, the Bureau cannot be faulted for any asserted deficiency in the ICWA notices to the tribes.  (See *In re K.M.* (2009) 172 Cal.App.4th 115, 119 [further inquiry not required where the agency failed to interview the child's great-grandmother because agency had given notice to the identified tribes and the record indicated the agency had "attempted on several occasions to elicit further information from the child's family, but was unsuccessful due to the family's hostility toward the Agency"].)

## DISPOSITION

The juvenile court orders are AFFIRMED.

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Sanchez, J.

A159211, Contra Costa County Child & Fam. v. SV et al