Filed 8/18/16  In re Maddison R. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re MADDISON R., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B270257 (Super. Ct. No. 15JD-00095) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,   Plaintiff and Respondent, v. CHAD L. and BARBARA J.,   Defendants and Appellants. | |

Chad L. and Barbara J., the biological parents of three-year-old Maddison R., appeal from the juvenile court's order denying a petition for modification (Welf. & Inst. Code, § 388)[1] and terminating their parental rights.  (§ 366.26).  Appellants contend, among other things, that San Luis Obispo County Department of Social Services (DSS), did not comply with the inquiry and notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C.S. § 1901 et seq.).  We affirm.

*Facts and Procedural History*

On April 1, 2015, San Luis Obispo County Department of Social Services (DSS) filed a dependency petition after mother was arrested for child endangerment,

---

[1] Unless otherwise noted all statutory references are to the Welfare and Institutions Code.

felon in possession of a firearm, and violating probation. (§ 300, subds. (b) & (g).) Mother was arrested at home with drug paraphernalia and had a long history of substance abuse.

Active drug users were in the home with Maddison who was in close proximity to a shotgun and methamphetamine pipe. The police found trash piled to the ceiling, broken glass, spoiled food, broken pieces of flooring, and a potty training chair that was overflowing. Mother reported that father's whereabouts were unknown and that he had limited involvement in Maddison's life.

Maddison was treated for a seizure disorder (epilepsy) and dehydration. The infant could not regulate her food intake and quickly gravitated from tears to laughter. Maddison hoarded food, was sexually reactive, and suffered panic attacks whenever an adult displayed affection.

DSS reported that father was in Wasco State Prison and had a lengthy criminal history for assault, vandalism, and drug related offenses. The trial court removed Maddison from mother's custody and ordered paternity testing which confirmed that Chad L. was the biological father.

The trial court sustained the petition and bypassed reunification services based on mother's substance abuse which led to the termination of parental rights of her two older children. (§361.5, subds. (b)(10) and (b)(11).) Services were bypassed for father who was serving a four year prison sentence. (§ 361.5, subd. (e)(1).)

The trial court ordered the parties to discuss possible placement with a relative and ordered a July 16, 2015 placement review.[2] On November 4, 2015, the trial court calendared the section 366.26 hearing for a contested hearing and said that it would rule on relative "placement issues" at that time. DSS was ordered to "invite anyone that is interested in being a placement to attend th[e] hearing . . . ."

---

[2] On July 14, 2015, prior to the placement review hearing, mother filed a notice of intent to file a petition for extraordinary writ review but failed to file the petition. (Cal. Rules of Court, rule 8.450.) We dismissed the matter as abandoned. (B265463.)

Mother filed a section 388 petition for services on the eve of the hearing, which was denied at the section 366.26 hearing on December 22, 2015. The trial court found that Maddison was adoptable and terminated parental rights. With respect to Maddison's placement, the trial court ordered that Maddison remain in the care of her "fost-adopt" parents. The trial court found that "I don't need to move Maddison" and "I have a good placement for this little girl that is clearly meeting her needs . . . ."

*Section 388 Petition for Services*

Mother contends that the trial court erred in denying her section 388 petition for services. Father joins in mother's argument.

The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) To prevail on the petition, the parent must show a change of circumstances and that modification of the prior order would be in the best interest of the child. (*In re S. J.* (2008) 167 Cal.App.4th 953, 959.) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' . . . . [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Denial of a section 388 petition rarely merits reversal as an abuse of discretion. (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

The trial court reasonably concluded that reunification services were not in Maddison's best interests. Mother was serving a jail sentence and receiving counseling but there was no change of circumstances. DSS reported that mother was scheduled to be released in February 2016, but as part of her sentence, still had to undergo nine months of drug treatment at a residential facility. Denying the section 388 petition, the trial court found that Maddison "has unique needs. The mother's visitation, when she was out of custody, was sporadic. There's been limited contact while she's been in custody. And there's no evidence . . . that the mother has actually acquired the skills that can meet Maddison's unique needs."

3

Substantial evidence supports the finding that the proposed order for services was not in Maddison's best interests. Mother was still addressing a long term substance abuse problem and unable to care for the child. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 200; see *In re Cassey D.* (1999) 70 Cal.App.4th 38, 48-49 [nine months of sobriety insufficient to warrant section 388 modification]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety since relapse, "while commendable, was nothing new"]; *In re Angel B.* (2002) 97 Cal.App.4th 454, 463 [parent's sobriety very brief compared to many years of addiction].) Renewed attempts to facilitate reunification are not in the child's best interests where the parent is a chronic drug user and has resisted prior treatment. (*In re Levi U.*, *supra*, 78 Cal.App.4th at p. 200.) The trial court reasonably concluded that ordering services in the hope that mother could stay clean and sober would be detrimental to Maddison and undermine the permanency and stability of an adoptive placement that Maddison so badly needs. Childhood is fleeting and does not wait until the parents grow up. (*In re Rikki* D. (1991) 227 Cal.App.3d 1624, 1632.)

*Preferential Relative Placement*

Mother argues that DSS and the trial court did not properly consider Maddison's placement with a relative. Although there is no requirement that a dependent child be placed with a relative, adult family members who are grandparents, aunts, uncles or siblings of the child are given preferential consideration for placement. (§ 361.3, subd. (c)(2).)

Section 361.3, subdivision (a) provides: "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . . In determining whether placement with a relative is appropriate, the county social worker and court shall consider, but shall not be limited to, consideration of . . . [¶] [t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs." (§ 361.3, subd. (a)(1).) The statute does "not supply an evidentiary presumption that placement with a relative is in the child's best interests" but does require that the social services agency

4

and juvenile court determine whether such a placement is appropriate, taking into account multiple factors including the best interest of the child, the parents' wishes, and the fitness of the relative. (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 320-321.)

Mother argues that the trial court failed to properly consider placement with the maternal grandmother, a cousin, and a maternal great aunt. The statutory preference for a relative placement applies at the dispositional hearing and "whenever a new placement of the child must be made," in which case, "the county social worker shall consider whether the relative has established and maintained a relationship with the child." (§ 361.3, subd. (d); see § 361.3, subd. (a)(7)(H) [relative preference applies where child moved after dispositional order made]; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1032 [relative placement preference applicable when new placement necessary after reunification services terminated but before parental rights terminated].)

Substantial evidence supports the finding that placement with a relative was not in Maddison's best interests. (§ 361.3, subd. (a)(1); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1068 [linchpin of section 361.3(a) analysis is "best interests of the child"].) The maternal grandmother requested placement but was disqualified based on her criminal and child welfare history. She had an extensive substance abuse history and multiple convictions for driving under the influence and vandalism, plus multiple probation violations. Grandmother lived at a sober living facility, was currently on probation, and violated probation a year before the section 366.26 hearing, all of which created a licensing barrier for placement.

Maddison had a cousin who lived in Bakersfield but there were concerns about the cousin's ability to address Maddison's special needs. The cousin was a single parent with three children, was pregnant, and on welfare assistance. The cousin saw Maddison only three times, the last time was more than a year before the 366.26 hearing. In a July 14, 2015 review report, the social worker stated that the cousin was re-contacted to see if she wanted to proceed with home placement approval after mother's services were bypassed. DSS did not hear back from the cousin. Mother claims that the cousin's

5

placement request was ignored but the trial court reasonably inferred that the cousin was no longer interested in the placement.

Mother argues that the trial court erred in not placing Maddison with the maternal great aunt in Idaho. On July 16, 2015, the trial court ordered DSS to initiate an evaluation of the aunt's home under the Interstate Compact on the Placement of Children (ICPC; Fam. Code, § 7900 et seq.; Cal. Rules of Ct., rule 5.616). The social worker did not request the ICPC evaluation until August 27, 2015, about three weeks after DSS contacted the prospective adoptive parents about moving Maddison into their home.

Mother complains that DSS "play[ed] both ends against the middle" by delaying and not following up on the Idaho ICPC. The alleged error, if any, was harmless. The great aunt was not entitled to preferential consideration (§ 361.3, subd. (c)(2) [preferential placement limited to grandparent, aunt, uncle or sibling]) and was not diligent in getting ICPC home approval for the placement. The record reflects that the great aunt had never met Maddison and there was no evidence that she was able to care for Maddison's special needs.

Substantial evidence supported the finding that it was not in the best interests of the child to change the foster care placement. (§ 361.3, subd. (a)(1).) Maddison was a "'higher-needs'" child, was slow to adjust to new people and environments, and was thriving in the fost-adopt home. The fost-adopt parents were committed to maintaining Maddison's connections with the birth family she was closest to and who were nearby. The social worker opined that placing Maddison in Idaho would be detrimental because it would remove her from all the people she knew and was connected to.

At the 366.26 hearing, the trial court was not required to consider a new placement but, in an abundance of caution, ruled on the placement requests. It found there was no evidence that the maternal grandmother or the great aunt could meet Maddison's special needs or were ready or able to care for Maddison when the child was placed with the fost-adopt parents in August 2015. The trial court found that Maddison had ongoing therapy needs and that a change of placement to Idaho would be "a drastic

6

move considering this child's circumstances and her age and her lack of knowledge" of the maternal aunt.

Mother's remaining arguments have been considered but merit no further discussion. The alleged error, if any, in not following relative placement procedures was harmless. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.) "The relative placement preference . . . is not a relative placement *guarantee* [citations], and the record contains ample evidence that the preference was overridden in this case." (*Ibid*.)

*ICWA Notice*

Father contends, and DSS agrees, that the trial court failed to comply with ICWA because the ICWA notices omit information about the paternal grandmother and paternal aunt. Mother joins in the argument.

At the jurisdiction hearing, father indicated that he had Indian ancestry with the Cherokee tribes. DSS assessed the paternal grandmother and aunt for placement but failed to list their names and addresses on the ICWA notice. DSS and the trial court had a continuing duty to inquire about whether Maddison was or may be an Indian child. (§ 224.3, subd. (a); Cal. Rules of Ct., rule 5.481(a); see *In re I.B.* (2015) 239 Cal.App.4th 367, 376-377; *In re S.M.* (2004) 118 Cal.App.4th 1108, 1116.)

We have granted DSS's motions to augment the record which reflects that DSS, on May 26, 2016, mailed revised ICWA notices listing identifying information about the father, paternal grandfather and grandmother, and paternal aunt. (See *In re Christopher I.* (2003) 106 Cal.App.4th 533, 562-567 [appellate record augmented to reflect that newly sent ICWA notices were adequate]; *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 867 [same].) Each of the Cherokee Tribes (Cherokee Nation, United Keetoowah Band of Cherokee Indians, and the Eastern Band of Cherokee Indians) responded with a determination that Maddison is not an Indian child or eligible to be a tribe member within the meaning of ICWA. The tribes' determinations are conclusive. (§ 224.3, subd. (e)(1); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 255; *In re Karla C.* (2003) 113 Cal.App.4th 166, 174.) Based on the tribes' responses, the

7

alleged error in the original ICWA notice has been rendered harmless. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1412-1413.) Reversal or remand here would exalt form over substance. (*Id.*, at p. 1413.) "There is no reason to believe that [Maddison] is an Indian child, nor is there any reason to believe more notices over more time will result in any more information." (*In re Christopher I.* (2003) 106 Cal.App.4th 553, 567.)

The judgment (order denying the section 388 petition and order terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

8

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Patricia McCourt, under appointment by the Court of Appeal, for Defendant and Appellant, Barbara J.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant, Chad L.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Petitioner and Respondent, San Luis Obispo County Dept. of Social Services.