Filed 1/17/25  In re Z.G. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Z.G. et al., Persons Coming Under the Juvenile Court Law. | B335124, B337296 (Los Angeles County Super. Ct. Nos. 23CCJP01829B–C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.G.,<br><br>    Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Affirmed.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court issued custody and visitation orders pertaining to Z.G. and A.G., the children of M.G. (Father) and his wife I.G. (Mother). Specifically, the court, when terminating its jurisdiction, awarded sole legal and physical custody of the children to Mother, with visitation by Father. In this consolidated appeal, Father contends the juvenile court erred by removing his children from his physical custody without finding that he posed a substantial danger to them or otherwise complying with Welfare and Institutions Code section 361.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.** *Events Leading to the Filing of the Dependency Petition, the Dependency Petition, and the Jurisdiction and Disposition Hearing*

Mother and Father married in 2013. Mother has two minor daughters, N.V. (born March 2008) and Z.G. (born March 2014), and a minor son, A.G. (born December 2022). Father is Z.G. and A.G.'s biological father but not the biological father of N.V.

According to Mother, after a dinner with family and N.V.'s friends to celebrate N.V.'s 15th birthday in March 2023, one of N.V.'s friends gave N.V. a hug when the boy's mother arrived to pick him up. This infuriated Father. Father accused N.V. of kissing the boy and "disrespecting [Father] in front of [Father's]

_____

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

face." N.V. started crying. She said she had hugged everyone at the party and the boy was not her boyfriend. When the family returned home, Father yelled at N.V. in close proximity to her in the bedroom. According to a video taken by Mother, Father made comments to N.V., including, " 'You are fucking nothing' "; " 'You're a fucking disrespectful kid. You're not even my fuckin [*sic*] child' "; and " 'Grab our shit and get the fuck out of here. Go to fucking El Salvador man.' " Mother, who had been lying on the bed with A.G., tried to stand up, but Father pushed Mother down. After demanding that N.V. leave the bedroom, Father "grabbed her arm, causing her to stand up, and began shoving her out the door with his hands." Father screamed and said "bad things." Paternal grandmother took A.G. to the living room.

According to N.V., Father hit the top of her head during the March 2023 argument. She also saw Father push Mother during the argument while Mother was holding A.G., who at the time was only a few months old. Mother said she could have fallen with A.G. At one point during the incident, Z.G. entered the bedroom, crying, and told Father and Mother to stop. N.V. left the bedroom while Mother stayed behind with Father. N.V. could hear Mother crying.

In a later incident, which Mother surreptitiously videotaped, Father was questioning N.V. about her homework, and in a stern voice, said, among other things, " '[S]top asking [*sic*] stupid or I'm [*sic*] smack you right now, okay' "; and " '[H]urry the fuck up and stop acting stupid alright.' "

Mother believed Father's problems could be traced in part to his brother (paternal uncle) passing away. Father had found the paternal uncle and two other people dead in the paternal uncle's apartment. Father had not "grieved properly" and would

3

randomly explode with anger and provoke arguments. Mother was afraid of Father and what he could do. Father had threatened in the past to end his life. He would yell at Mother in front of the children, which made them anxious. Z.G. defecated more than once on herself and told Mother it was because she felt nervous. The child seemed nervous all the time. Z.G. suggested maybe they should not have celebrated N.V.'s birthday in order to avoid problems with Father. Mother suggested therapy for Z.G., but Father refused.[2] Mother said N.V., who also felt anxious around Father, had told her, "I can't take this anymore."

On May 31, 2023, the Department of Children and Family Services (Department) filed a dependency petition pursuant to section 300, subdivisions (b)(1) and (j).[3] Counts b-1 and j-1 alleged that Father physically abused N V. and that his physical abuse of the child, as well as Mother's failure to protect her, placed N.V. and her half-siblings Z.G. and A.G. at risk of serious physical harm. Count b-2 alleged that the three children were

---

[2] According to Mother, she and Father had previously been in couple's counseling, but Father refused to go back once the counselor disagreed with him.

[3] The petition also alleged two violations of section 300, subdivision (a) ("serious physical harm inflicted nonaccidentally") (counts a-1 and a-2), but the juvenile court later dismissed those counts. The petition pertained to three children, N.V. (case No. 23CCJP01829A), Z.G. (case No. 23CCJP01829B), and A.G. (case No. 23CCJP01829C).

endangered by Father's violent conduct against Mother and by Mother's failure to protect them.[4]

At an initial hearing held on June 14, 2023, the juvenile court determined that Father was Z.G. and A.G.'s presumed father and N.V.'s alleged father.[5] Acknowledging that Mother and Father were no longer living together,[6] the court that same day ordered N.V. released to Mother, with monitored visitation between N.V. and Father, and Z.G. and A.G. released to Mother and Father.

At the jurisdiction and disposition hearing on July 27, 2023, the juvenile court sustained counts b-1, b-2, and j-1 of the dependency petition and declared the children dependents of the court. Finding that the Department "made reasonable efforts to

---

[4] Counts b-1 and b-2 were alleged as to all three children, and count j-1 was alleged as to Z.G. and A.G.

[5] On June 14, 2023, the juvenile court found another individual was N.V.'s biological father, ruled Father was N.V.'s alleged father, and deferred a decision on whether Father was N.V.'s presumed father. On July 27, 2023, the court denied Father's request for presumed father status as to N.V. and stated that its "ruling as to [Father] being alleged stands." Father's appeal is limited to the orders regarding Z.G. and A.G., and not N.V. Accordingly, we do not address any court order as to N.V.

[6] According to a report by the Department for the June 2023 hearing, Mother indicated she moved out in May 2023. In July 2023, the Department filed its jurisdiction/disposition report, which stated that, according to Mother and Father, the two had separated.

prevent removal" and "there are services available to prevent it," the court ordered N.V. to remain released to Mother, and Z.G. and A.G. to remain released to Mother and Father. Visits between Father and N.V. were to be monitored. The court also ordered family preservation services for Father and Mother. It ordered Father to participate in anger management and parenting programs, as well as individual counseling to address issues that included domestic violence. It further ordered individual counseling for Mother and conjoint counseling for the children with Mother if recommended by an individual therapist.

## II. *The Section 364 Review Hearing, and Subsequent Hearings and Orders*

In a January 9, 2024 status report for the section 364 review hearing, which was set for later that month, the Department stated that N.V. resided in the care of Mother and that Z.G. and A.G. "go back and forth from [Mother's] home to [Father's] home." Z.G. and A.G. would spend two to three days with Father. Mother stated that it was "stressful for [Z.G.] to go back and forth between homes." Mother ensured the children had a safe and stable home environment, attended school regularly, and received medical and dental care. The social worker observed Mother with the children, and all three children appeared to have a strong bond with Mother. Mother said she received a mental health screening for individual therapy but could not receive services because she did not meet the medical necessity requirement for individual therapy. With Mother's consent, the social worker referred Mother to prevention and aftercare services.

The social worker made multiple attempts to contact Father, but Father did not respond. Asked to discuss his court-

ordered programs and to schedule an in-person visit, Father finally replied with a text message in mid-November 2023. In it, Father asked when a good time would be to talk, but, when the social worker provided Father with his availability, Father again did not respond. A month later, the social worker made an unannounced visit to Father's home. Father said he was very busy, had not followed up with the court-ordered programs, and was unable to complete them. Although Father stated he was open to prevention and aftercare services, Father did not respond after the social worker sent him a consent form for those services. In addition, Father did not make himself available to the Department to discuss visitation with N.V. and identify a monitor.

In its status report, the Department recommended that the juvenile court terminate its jurisdiction over Z.G. and A.G., with a custody order awarding joint legal and physical custody of the two children to Mother and Father and providing for primary residence to Mother. The Department also recommended the termination of jurisdiction over N.V., with a custody order awarding sole legal and physical custody of the child to Mother and restricting the Father to monitored visits.

A January 12, 2024 "last minute information" report for the court stated that, according to Mother, Z.G. and A.G. were staying with Father only once a week because Father was very busy. Mother was the children's primary caregiver. Mother reported she would look into filing for divorce soon.

As set forth in a January 24, 2024 "last minute information" report for the court, Mother stated that Father was not communicating with her anymore, alleging that he had blocked her number, and the children were no longer spending

the night at Father's home.  Father left Z.G. and A.G. overnight with paternal grandmother while he traveled to San Francisco to watch a football game.  Although Father had previously told the Department that paternal grandmother had suffered two strokes and had been recovering in mid-December 2023, and Mother expressed concern that paternal grandmother was unable to pick up and carry A.G., Father later asserted that paternal grandmother had been evaluated by a doctor and was doing well. Mother also claimed Father was not helping her out financially and put Z.G. on a video call with his new partner, instructing Z.G. not to tell Mother.  The Department set forth its assessment that "moving forward there may be co-parenting issues."  The Department concluded Father had distanced himself from N.V., as shown by his failure to attempt to have monitored visits with her.

On January 25, 2024, the juvenile court held the section 364 review hearing.  Mother and Father both testified. Among the exhibits admitted into evidence were the Department's reports and a photo of Mother's phone with text messages that Mother testified she had received from Father in December.  Father also testified he had sent the messages. Father's text messages to Mother stated in part, "I fucken [*sic*]. . . [¶] Hate u [¶] . . . [¶] You are the worst person ever [¶] The worst wife that ever lived [¶] You never valued me or respected me. That is the reason [N.V.] has always disrespected me and she saw me as a fool and lied to me.  [¶]  She could have some respect and told me she had a boyfriend . . . . [¶] . . . [¶] I wish you were dead."

At the section 364 hearing, Father's counsel indicated that Father requested "joint physical custody of the children without

8

primary custody to Mother" and "joint legal custody as is recommended by the Department," but that he was "submitting as to the recommendations as to [N.V.]." Father's counsel argued he did not "believe this rises to the level that it's in the best interest for the children for Mother to have sole physical and sole legal custody."

Mother's counsel stated that Mother requested sole legal and physical custody of the children. The minors' counsel joined in Mother's request, asserting that awarding Mother full legal and physical custody was in the children's best interest. The Department's counsel submitted on the Department's recommendation.

After hearing the attorneys' arguments, the juvenile court stated it was terminating its jurisdiction. It then considered the appropriateness of a joint custody order "based on whether the case issues have been resolved," but said it was "not persuaded that they have." Although pointing out there was "ample evidence [Mother] is compliant and has been safely caring for the children," the court explained it was concerned about Father's "ongoing anger management and lack of insight," combined with his "noncompliance in services." It concluded Mother was to "have sole legal, sole physical custody of the children," with Father to have a minimum of nine hours per week of unmonitored visits. The court stated that the juvenile custody order "should specify the specific case plan services that [Father] can show compliance with should he seek a different order in family court at a different time." It further stated that it had the discretion to make its orders, which it believed to be "in the best interest of the children."

The court also ordered the parties to participate in mediation. To allow the parties time to mediate further details regarding custody and visitation in good faith, the court stayed its termination of jurisdiction pending filing of the juvenile custody order, the terms of which were to include what the court had already decided regarding custody and visitation. It also ordered a juvenile custody order hearing set for February 23, 2024, which the court in subsequent orders ultimately continued to March 26, 2024. The court explained it would call the matter for hearing in the event the outcome of the parties' mediation required the court to hear further from the parties, but clarified it would not reopen argument as to the decisions it had already made at the January 25, 2024 hearing, which were "the court's orders today." Father filed a timely notice of appeal from the court's January 25, 2024 order as to Z.G. and A.G. (B335124), which is part of this consolidated appeal.[7]

On March 26, 2024, in Z.G. and A.G.'s dependency cases, the court received, signed, and filed a juvenile custody order, which included among its provisions the granting of sole legal and physical custody of Z.G. and A.G. to Mother. The custody order attached a visitation order and holiday schedule providing for unmonitored visitation by Father of Z.G. and A.G. on certain days and at specified times. Stating that Father was not in compliance with his court-ordered case plan, the custody order proscribed a change in custody until Father showed substantial

---

[7] Father's notice of appeal (B335124) identified only the dependency cases of Z.G. (case No. 23CCJP01829B) and A.G. (case No. 23CCJP01829C). The notice stated it pertained to two children, Z.G. and A.G.

compliance with the case plan—including participation in anger management and parenting programs and individual counseling—that the juvenile court had ordered in July 2023 and that was attached to the custody order. That same day, the juvenile court lifted the stay of its January 2024 termination order and terminated its jurisdiction. Father filed a timely notice of appeal from the March 26, 2024 orders (B337296), which is part of this consolidated appeal.[8]

## DISCUSSION

### I. *Applicable Law and Standard of Review*

"Dependency proceedings span up to four stages: jurisdiction, disposition, reunification, and permanency." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 (*Michael G*).) To ensure that cases proceed to the final stage "only when necessary," the juvenile court must, "[t]hroughout the proceedings, . . . pay careful attention to the well-being of the child, the efforts of the parent, and the services provided by the state." (*Ibid*.)

At the first stage, which pertains to jurisdiction, "the juvenile court determines whether to declare a child a dependent of the court because the child is suffering, or at risk of suffering, significant harm." (*Michael G.*, *supra*, 14 Cal.5th at p. 624.) At the second stage, "the dispositional stage," "the court decides if

---

[8] As with his notice of appeal in B335124, Father's notice of appeal in B337296 identified only Z.G.'s and A.G.'s dependency case numbers, and stated it pertained to two children, Z.G. and A.G.

11

the child can be returned to, or must be removed from, a parent's custody." (*Ibid.*)[9]

Under section 361, the juvenile court "may . . . order that the child be removed from a parent's physical custody if there is clear and convincing evidence that removal is necessary to protect the child from a substantial risk of harm." (*In re I.C.* (2018) 4 Cal.5th 869, 876.) Specifically, section 361 provides in pertinent part, "A dependent child shall not be taken from the physical custody of their parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of" certain circumstances. (§ 361, subd. (c).)[10] Those circumstances include that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

---

[9] As for the third stage, "[d]uring the reunification stage, qualifying parents are offered services to address the causes that led to the loss of custody." (*Michael G.*, *supra*, 14 Cal.5th at p. 624.) "[I]f the child cannot be safely returned to the parent within a statutorily specified timeframe," the juvenile court proceeds to the fourth and final stage, "the permanency stage," where the court selects a permanent plan for the child, such as termination of parental rights and placement of the child for adoption. (*Ibid.*)

[10] A provision applicable to parents with whom the child did not reside is found at subdivision (d) of section 361.

12

"Section 364 governs review hearings for dependent children who have not been removed from one or both parents." (*In re R.F.* (2021) 71 Cal.App.5th 459, 469; see *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650 ["section 364 applies, not only to children who have never been removed from parental custody, but also to those who were removed and then returned to only one parent"].)  Under section 364, "the court shall determine whether continued supervision [by the juvenile court pursuant to section 300] is necessary" and "shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (§ 364, subds. (a), (c); *In re Gabriel L.*, at p. 650 ["[w]hen proceeding under section 364, because the child is in placement with a parent, the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home"].)[11]

"Section 362.4 authorizes a juvenile court to issue exit orders for visitation and custody when terminating dependency jurisdiction, and those orders remain in place even after jurisdiction is terminated."  (*In re R.F., supra,* 71 Cal.App.5th at p. 473; see § 362.4; *In re Chantal S.* (1996) 13 Cal.4th 196, 203 [" '[w]hen the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders' "].)  The juvenile court has "statutory discretion

---

[11]     *In re Gabriel L., supra*, 172 Cal.App.4th at page 651 draws a distinction between "out-of-home placement" and "placement with a parent."

13

to impose necessary limitations on an offending parent's contact with a dependent child before terminating its jurisdiction." (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 208; see *In re Chantal S.*, at p. 204 [concluding the juvenile court had authority to base its "determination, that continuation of dependency was at that time unnecessary for Chantal's protection, . . . on the existence of the court's custody and visitation order"].)  The custody and visitation order "shall continue until modified or terminated by a subsequent order of the superior court."  (§ 362.4, subd. (b).)[12]

"When a juvenile court makes custody and visitation orders, it does so . . . guided by the totality of the circumstances in issuing orders that are in the child's best interests."  (*In re C.M.* (2019) 38 Cal.App.5th 101, 109; see *In re Chantal S., supra*, 13 Cal.4th at p. 201 [focus of courts is "on the best interests of the child"; "[t]he juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child"]; see also *In re John W.* (1996) 41 Cal.App.4th 961, 965 [when making a custody order under section 362.4, "it is the best interests of the child, in the context of the peculiar facts of the case before the

_____

**12** Until modified or terminated by a subsequent order of the superior court, the juvenile court's section 362.4 custody and visitation order "will become part of the relevant family law file," such as the file in a proceeding to establish paternity or for legal separation or marital dissolution.  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513; see § 362.4, subd. (b).)  "If no family law action is pending, the [juvenile] court's order 'may be used as the sole basis for opening a file in the superior court of the county in which the parent, who has been given custody, resides.' "  (*In re T.S.*, at p. 513, fn. 3; see § 362.4, subd. (c).)

14

court, which are paramount"].) " '[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case.' " (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)

We review a custody order under section 362.4 for abuse of discretion. (*In re N.M.*, *supra*, 88 Cal.App.5th at p. 1094.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted; accord, *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165.)

"Issues involving statutory interpretation and application are subject to a de novo standard of review." (*In re C.M.*, *supra*, 38 Cal.App.5th at p. 108.) When reviewing a "question of statutory construction de novo, we begin with several guiding principles. We start with the statute's words, which are the most reliable indicator of legislative intent. [Citation.] 'We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.' " (*In re R.T.* (2017) 3 Cal.5th 622, 627.)

## II. *Father Fails To Establish That the Juvenile Court Erred*

Father seeks reversal of the juvenile court's orders terminating jurisdiction and providing for custody and visitation of his children. Specifically, he contends that the juvenile court,

15

by awarding Mother sole physical custody of his children Z.G. and A.G.,[13] effectively removed the two children from his physical custody and that the court erred by doing so under a best-interests-of-the-child standard rather than complying with section 361, which he asserts requires a finding that he posed a substantial danger to them.[14]  We conclude reversal is not warranted.

### A.  *Father forfeited his challenge*

As Father acknowledges, he did not raise his contention of error in the juvenile court.  He thus forfeited it.  (See, e.g., *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 ["[a]n appellate court ordinarily will not consider challenges based on procedural defects or erroneous rulings where an objection could have been but was not made in the trial court"; "[d]ependency cases are not exempt from this foreclosure doctrine," the purpose of which "is to

---

[13]    Father's appellate briefing ambiguously argues that the juvenile court erred by removing "the children" from his physical custody without identifying Z.G. and A.G. specifically. Nevertheless, as explained *ante*, Father's notices of appeal identified only Z.G.'s and A.G.'s (and not N.V.'s) dependency case numbers and stated they pertained to two children, Z.G. and A.G.

[14]    We are aware of cases concluding that removal under section 361 does not require a finding that the parent posed a danger to the children.  (See, e.g., *In re D.D.* (2019) 32 Cal.App.5th 985, 996 ["[i]t is not required that the parent be dangerous or that the child have been harmed before removal is appropriate"].)  Nevertheless, given the nature of this opinion's conclusions, we do not address whether section 361 requires such a finding.

16

encourage parties to bring errors to the attention of the juvenile court so that they may be corrected"].)

Relying on *In re S.M.* (2004) 118 Cal.App.4th 1108, Father argues he did not forfeit his assertion of error because the juvenile court had an opportunity to consider it. (See *id.*, at pp. 1112, 1121–1122 & fn. 9 [concluding the father did not forfeit the contention that the trial court erred in failing to ensure his daughter was able to visit her half-brother because, although the father did not raise the issue, it was nevertheless raised in the juvenile court by the paternal grandmother who was a de facto parent].) Father contends the juvenile court had that opportunity because the children's attorney herself raised the issue when, at the January 25, 2024 hearing, she mentioned *In re J.M.* (2023) 89 Cal.App.5th 95. In that case, our colleagues in Division Four of this court concluded that, although section 361 findings are required at the disposition stage of dependency proceedings, they do not apply to subsequent custody and visitation orders upon termination of jurisdiction issued at a section 364 review hearing under section 362.4. Rather, our colleagues determined, the best interest standard applied to those custody and visitation orders, with no requirement of finding detriment under section 361. (*In re J.M.*, at p. 113.)

We reject Father's contention that there was no forfeiture. At the January 25, 2024 hearing, the children's attorney, citing *In re J.M., supra,* 89 Cal.App.5th 95, stated, "This was a case from last year that says that joint family maintenance does not mean that joint physical custody is guaranteed when the court closes the case. The custody orders are based on the best interest of the children." The children's attorney appeared to agree with the court's conclusion *In re J.M.* Moreover, Father's attorney did

17

not object or otherwise express disagreement with that position. Indeed, as explained *ante*, Father's counsel himself applied the best-interests-of-the-child standard to support his arguments at the hearing rather than argue that any detriment finding under section 361 was required. On this record, we conclude the juvenile court had no opportunity to consider the contention of error Father now raises for the first time on appeal.

Father argues he should be excused for failing to raise his contention in the juvenile court because *In re J.M.*, *supra,* 89 Cal.App.5th 95 and an opinion by Division Seven of this court, *In re T.S.*, *supra*, 52 Cal.App.5th at page 515, both held that section 361 did not apply to section 362.4 exit orders. As such, according to Father, it would thus have been futile to object to the juvenile court's failure to apply the section 361 requirements to its exit orders. However, even if Father was excused from raising the issue below, we would reject the claim of error on the merits, as discussed below.

### B. *The juvenile court did not err*

We agree with the conclusions of *In re J.M.*, *supra,* 89 Cal.App.5th 95 and *In re T.S.*, *supra*, 52 Cal.App.5th 503 that the requirements of section 361, such as finding a substantial danger to the child if returned home and no available services to the child absent removal, do not apply to custody and visitation orders issued upon termination of jurisdiction under section 362.4. As *In re T.S.* states, and *In re J.M.* quotes with approval, "To be sure, at the disposition stage of a dependency proceeding, a court may not remove a child from a parent's custody and place the child in the custody of the Department unless the court finds there is a substantial danger to the child and no available services to protect the child absent removal. [Citation.] There is

18

no statutory language, however, suggesting this standard be applied when the court issues a custody order upon the termination of jurisdiction pursuant to section 364.  To the contrary, . . . at that stage of the proceedings, the court must consider the child's best interest." (*In re T.S.*, at p. 515; accord, *In re J.M.*, at p. 113.)

Father argues that the holdings of *In re J.M.*, *supra,* 89 Cal.App.5th 95 and *In re T.S.*, *supra*, 52 Cal.App.5th 503 make no sense under the dependency statutes.  He points out that the plain language of section 361, subdivision (c)(1) requires a court to find detriment before removing "[a] dependent child . . . from the physical custody of their parents."  He asserts that, because a "dependent child" is a child over whom the juvenile court exercises jurisdiction, section 361 must apply at any time the court has jurisdiction over the child, including when issuing a custody order upon termination of jurisdiction.  To support his argument, he also cites in part to section 304, which provides that, "[w]hile the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court."  He argues it is "absurd" to require a detriment finding for removal at disposition but not at termination.

Father's argument, however, merely shows the juvenile court has authority to issue custody orders while the child is under its jurisdiction and would no longer have that authority after it terminates its jurisdiction.  He points to no statutory language—including in sections 361, 362.4 or 364—expressly providing that the section 361 standard for removal applies to an exit order under section 362.4.

Moreover, what Father fails adequately to appreciate is that section 361 pertains to removal from parental custody such

19

that custody of the child is to be under the Department's supervision. (See *In re B.L.* (2012) 204 Cal.App.4th 1111, 1116 [" '[f]or all practical purposes, when a dependent child is ordered removed from parental custody under section 361,' the Agency gains both legal and physical custody of the child"]; see also § 361.2, subd. (e) ["[i]f the court orders removal pursuant to Section 361, the court shall order the care, custody, control, and conduct of the child *to be under the supervision of the social worker*" (italics added)]; § 364, subd. (e) [referring to removal of a child from parental custody and committing "the child to the care, custody, and control *of the social worker* pursuant to Section 361" (italics added)].) Removal at disposition is thus different from a custody order providing sole custody to one parent over another upon termination of the juvenile court's jurisdiction because the former contemplates the public agency's custody of the child, while the latter, which involves custody over a child *between the parents,* does not.[15]

Section 302, subdivision (c), provides, "When a child is adjudged a dependent of the juvenile court, any issues regarding custodial rights *between his or her parents* shall be determined solely by the juvenile court, as specified in Sections 304, 361.2, and 362.4, so long as the child remains a dependent of the juvenile court." (Italics added.) The statute makes no mention of a section 361 "substantial danger" requirement having to apply

---

[15] Nevertheless, as we have explained, in deciding what, if any, custody order is appropriate upon termination of jurisdiction, the juvenile court determines what is in the best interests of the child under the totality of the circumstances. The best interests of the child is paramount to a juvenile court even when deciding custody between the parents.

20

when a juvenile court issues an order determining custody rights between parents.

In addition, section 302, subdivision (d), which addresses modification of a section 362.4 custody order issued by the juvenile court upon termination, does not mention the section 361 "substantial danger" element. Rather, modification requires a change of circumstances and that the modification be "in the best interests of the child." (§ 302, subd. (d).)

In sum, the juvenile court did not err when it ordered Mother to have sole physical custody of Z.G. and A.G. upon termination of its jurisdiction by considering what was in the children's best interests rather than applying a standard under section 361. Reversal of the court's orders is not warranted.

## DISPOSITION

The juvenile court's orders terminating jurisdiction and providing for custody and visitation of Father's children are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

BERSHON, J.*

We concur:

EDMON, P. J.

ADAMS, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.